Richards *vs.* Hunt, Rankin & Lamar.

---

## RICHARDS *vs.* HUNT, RANKIN & LAMAR.

1. Where, with the consent and advice of a retiring partner, the old firm name continues to be used, and there is no notice to a creditor who deals with the firm that he has retired, if such creditor acts on the faith that the old member, whom he knew from his own statements to have been for years a partner, is still so, and on the strength thereof credits the firm, though he may not do so till after the change, yet the retiring partner will be estopped from denying the partnership, and his liability thereunder.

2. That a witness has refreshed his memory since the trial of a case by reference to documents which were equally accessible before, is not such newly discovered testimony as to be ground for a new trial. Especially not, where the witness is also a party.

3. The verdict is too large by $15.87, which is directed to be written off.

Partnership. Estoppel. Newly discovered evidence. New trial, Verdict. Before Judge SPEER. Rockdale Superior Court. February Term, 1880.

Hunt, Rankin & Lamar sued Ayers & Co., alleged to be composed of Ayers, Smith and Richards, on an account. Richards pleaded no partnership. The declaration stated the principal debt at $474,00, but the account showed the principal to be $458.13. On the trial, the jury found for the plantiffs $474.00, besides interest. Defendant moved for a new trial on the following, among other grounds:

(1.) Because the verdict was contrary to law and the evidence.

(2.) Because of newly discovered testimony. This ground rested on the fact that since the trial one of the defendants (Smith) had refreshed his memory by reference to the invoice book of the firm, and remembered certain new facts.

J. N. GLENN; J. J. FLOYD; HOPKINS & GLENN, for plaintiff in error.

BARTON & CHRISTIAN, for defendants.

JACKSON, Chief Justice.

Hunt, Rankin & Lamar brought suit against Ayers & Co. on an account for various articles of merchandise, consisting of drugs and medicines and other merchandise. They alleged that the firm was composed of Ayers, Smith and Richards. Richards alone contested the claim, on the ground that he was not a partner when the goods were purchased. Under the charge of the court the jury found that he was a partner, and verdict was rendered against him as well as the other two. He moved to set it aside and have a new trial, and on its being refused him he excepted and the error assigned is the refusal of the presiding judge to grant him a new trial on the grounds set out

in the motion.   These grounds the judge does not certify so far as they relate to the charge except as they conform to the charge written out, which is set out in the motion for a new trial and the bill of exceptions, and that which relates to his refusal to charge as requested, he states that it was not in writing nor does he remember any oral request of the sort.   So that the question is narrowed to this point:   Is the verdict under the evidence in accordance with the law or is it against the law; and so looking at it, the case is really before us on its merits without regard to the broken paragraphs of error in the charge, which do not appear certified, so that we can consider them *seriatim.*

The facts are that in 1876 and 1877, Ayers and Richards composed the firm of Ayers & Co.; that on the sixteenth day of January, 1878, Smith became a member of the firm; that an advertisement was made in the Conyers *Examiner* on the sixteenth day of February, 1878, to the effect that Ayers & Co. were carrying on business, and at the head of the advertisement appeared on one side Ayers' name, and on the other, Smith's; that the first bill of goods was sold on the fourteenth day of February, 1878, and so on through that year from time to time; that an invoice of the stock was taken on the sixteenth day of January, 1878, when Smith became a member, but that Ayers himself did not know until the fall of the year that Richards had retired from the firm; and that persons doing business on the same street in the village of Conyers did not know that he had retired; that no published notice of his having retired was made further than the one in the Conyers *Examiner,* if that by implication or legal effect did give notice that he had retired; that plaintiffs knew that Smith entered the firm, but did not know that Richards retired from it; that they credited on the strength of his name, neither of the other two being persons of property or credit; that Smith was the grandson-in-law of Richards; that no settlement was had

between Ayers and Richards until the autumn of 1878, and that involved other things besides the partnership, and that Richards advised that the old name of the firm be continued, and that it was continued in the same store and under the same name as before.

On these facts the legal question is, was Richards liable as a member of the firm of Ayers & Co., and is the verdict under the evidence sustained by the law?

1. Pretermitting the remarkable fact that a partner should retire from a firm on the sixteenth day of January, 1878, and his copartner not know it until the succeeding autumn, and that business men on the same street in a little village should not have heard of it, and taking it as true that Mr. Richards ceased in fact and truth to be a member of the firm of Ayers & Co. on the sixteenth day of January, 1878, is he relieved from his liability to these creditors of the firm by any knowledge of theirs or notice to them which this record discloses?

In respect to the first sale on the fourteenth day of February, 1878, the publication in the newspaper gave no notice at all, because the sale was two days before the notice was published; so that unless the plaintiffs got knowledge in some other way, they had none when they began dealing with Ayers & Co., and all that the record discloses on that subject is that Rankin heard that Lucien Smith had gone into the firm in "the spring of 1878, or in January of that year," but he understood that Richards was still in, and dealt on his credit, knowing that he had been a partner in 1876 and 1877; and the additional fact that the agent, Bradfield, was told by Smith that Richards was out and Smith in the firm in his stead; but he could not tell whether this information was given to Bradfield, plaintiffs' agent, before or after the goods were sold.

These facts, we think, make the case that plaintiffs stood on the footing of dealers with the old firm; for when they began to deal and sold one parcel of the goods

sued for, there is no evidence that they or their agent knew that Smith had become a partner, and thereby the old firm was dissolved. And the ruling in the case of Butler & Carrol *vs.* same defendant, decided this morning, would cover this case.

But we are not disposed to let the principle which governs this case rest there. The record shows that the old name of the firm was continued, and that it was so continued by the advice of the retiring partner; that no publication of any sort was given that Richards had retired, and that the world had no notice of the retirement. His old partner did not know it until the autumn following, and his nearest mercantile neighbors on the same street knew nothing of it. Under these facts, Richards is estopped from denying the partnership.

Wherever by the consent and advice of the retiring partner the old name of the firm continues to be used, and there is no notice to a creditor who deals with the firm that he has retired, and the creditor, though he never sold to the firm before the change, yet acted on the faith that the old member was still in the firm, having knowledge from him that he was a member for years before, and credited the firm on his name, such retiring partner is estopped from denying the partnership and his liability thereunder; especially when the goods are sold within a short time after the alleged retirement, in the absence of reasonable notice to the creditor. And this record shows no such reasonable notice. 24 Ohio, 598; Parsons on Partnership, 3d Ed., pp. 447, 448, 449; side pp., 412, 413, notes and cases cited.

2. The newly discovered evidence is simply that a witness has refreshed his memory since the last trial by an examination of documents, and would add to his testimony as to dates. We think diligence required the party to ascertain what this witness knew beforehand, or could know by posting himself from the invoices, especially as the witness was the new partner who came into the firm, and was related to the retiring partner.

3. The verdict should have been for $458.13, instead of $474.00, as the principal debt—fifteen dollars and eighty-seven cents of interest being added by the jury as principal.

Let the judgment be corrected accordingly, and when so corrected be affirmed.